aEE

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GATEWAY SYSTEMS, INC. )
)
      Plaintiff, )
)
                       ) Case No. 10 C 2276
)
v. ) Judge Elaine E. Bucklo
)
) Magistrate Judge
) Arlander Keys
)
CHESAPEAKE SYSTEMS )
SOLUTIONS, INC., )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gateway Systems, Inc., and Gateway Web Services, Inc., (collectively "Gateway") and Defendant Chesapeake Systems Solutions, Inc. (Chesapeake) are parties to a software licensing agreement. After a dispute arose, Gateway brought the instant litigation. Before the Court is Plaintiff's Motion to Compel [ECF No. 249] and their Motion to Compel Answers to Interrogatories [ECF No. 253]. For the reasons set forth below, Plaintiffs' Motion to compel is granted in part and denied in part. Their Motion to Compel Answers to Interrogatories is denied.

### Discussion

The federal discovery rules permit liberal discovery in an effort to facilitate trial preparation or settlement of legal disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir.

2009). Indeed, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" even if the relevant information is not admissible at trial. Fed. R. Civ. P. 26(b)(1). In this instance, however, the discovery must "appear[] reasonably calculated to lead to the discovery of admissible evidence." *Id*. "[T]he burden is upon the objecting party to show why a discovery request is improper." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)(citing *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)). If the party fails to make the requisite showing, Federal Rule of Civil Procedure 37 allows the Court to enter an order compelling the party to comply with discovery requests.

Gateway requests that Chesapeake be ordered to produce certain cost documentation from third party vendors. Additionally, they ask that Defendant be required to respond to two interrogatories from Plaintiffs' Third Set of Interrogatories. The Court addresses each in turn.

## I. Plaintiffs' Motion to Compel

One of the issues in this case is whether certain amounts charged to customers by Defendant are subject to the following provision,

> B. Fees actually collected from customers resulting from licensing the Gateway Software as an ASP Service shall be distributed with Seventy Five Percent (75%) being paid to Chesapeake and Twenty

2

Five Percent (25%) being paid to Gateway.
Plaintiffs maintain that all payments received by Defendant from its treasury customers are subject to the twenty-five percent royalty, irrespective of whether the sum included an amount to reimburse Defendant for third-party vendor charges. Defendant disagrees and argues that certain costs which it passes on to its customers, specifically those covering computer hardware and hosting services, are beyond the scope of the provision and thus, exempt from the royalty calculation. Gateway seeks documents reflecting these costs and maintain, despite Chesapeake's representations to the contrary, that the records are actually the subject of requests for production numbers 2, 9, 21, and 31.[1]

a. ***Request Number 2***

Request for production number 2 asks that Defendant, "[t]o the extend [sic] not otherwise provided, produce documents that reflect the total amount Chesapeake collected, by customer, from licensing the Gateway Software." Chesapeake maintains that its production of customer invoices satisfies the request.

Request number 2 could not be more clear in the information sought. Indeed, it explicitly asks for documentation which

---

[1] Request number 2 is found in Gateway Systems, Inc. and Gateway Web Services, Inc.'s Second Requests for Production to Chesapeake Systems Solutions, Inc. The remaining document requests at issue (9, 21, and 31) are contained in Gateway Systems, Inc. and Gateway Web Services, Inc.'s Requests for Production to Chesapeake Systems Solutions, Inc.

3

reveals the sums collected by Defendant from each customer. In producing customer invoices marked "PAID," Chesapeake provided the information sought. With even the most liberal of readings, it cannot be said that records reflecting third-party charges – even those which substantiate the breakdown of charges on the customer invoices – are subsumed in this request. The Court declines to find that this is a proper basis for granting Gateway's motion to compel. Therefore, the motion to compel, as it relates to request number 2, is denied.

### b. *Request Number 9*

In request number 9, Chesapeake was asked to produce "[a]ll documents reflecting Chesapeake's sub-licensing customers and business through Bank of America." In response, Defendant produced "all of its customer contracts and every email and other correspondence with the bank and related customers, in addition to every invoice that [it] sent to [Bank of America] from the inception of that relationship in 2006, to its termination in June, 2010."

The Court finds that documents which show third-party equipment and services costs which Chesapeake passes on to Bank of America (as they related to Plaintiffs), are within this request. Defendant argues that the customer invoices provided "reflect every fee that Chesapeake was paid by the bank." But unlike the previous one, this document request is not limited to

amounts collected by Defendant. Rather, it is broad enough to encompass all documentation regarding Defendant's relevant business with Bank of America. This includes not only invoices sent by Chesapeake to the bank but also third-party invoices received by Defendant (and/or records reflecting corresponding payments) for hardware and services provided for this client.

Defendant further argues that the documents are not relevant because Plaintiffs' President "testified that the purpose, nature or reason for a charge on a customer invoice was 'irrelevant' to his damages calculations." However, the Court finds that, to the extent that Defendant intends to challenge this assertion (it does), the documents are, indeed, relevant. Should the trier of fact find that the reimbursement charges are not subject to royalty payments, Plaintiffs are entitled to know just how much is properly classified as such. Gateway is not required to, in essence, take Defendant's word for it. While Chesapeake has represented that certain amounts are reimbursement charges, it is appropriate for Gateway to have the actual documentation on which Chesapeake relies. Nor does the Court find this task to be particularly onerous or costly, considering that the information sought is for a limited number of customers over a set period of time.

The Court, therefore, finds that the documentation sought by Plaintiffs, as it relates to Bank of America, is within request

number 9. The motion, as it concerns request number 9, is granted.

   c.   **_Request Number 21_**

Pursuant to request number 21, Defendant was to provide, "[a]ll documents reflecting the amount of licensing fees under the 2003 Licensing Agreement and 2005 Amendment generated by Chesapeake in 2010." Defendant states that it has provided invoices responsive to this request.

The Court does not agree that documents reflecting charges by third-party vendors for hardware and services are within the scope of this request, because these expenses do not represent licensing fees. Instead, the Court finds that the invoices previously produced are, indeed, responsive. Even a review of Exhibit 4 to Defendant's Consolidated Opposition to Plaintiffs' Motions to Compel reveals that a large number of the invoices contain a specific line item for "License Fees." Because third-party vendor invoices for equipment and services are not within this request, this is not an adequate basis for granting Plaintiffs' motion to compel. Therefore, the motion, to the extent that it relies on request number 21, is denied.

   d.   **_Request Number 31_**

Request number 31 seeks "[a]ll expert reports, findings, and conclusions and all materials relied upon or used by any expert." Plaintiffs maintain that, because Defendant's expert, Neil H.

Demchick, relied on invoices when "calculat[ing] ASP expenses (hardware equipment and hosting services) as part of Chesapeake's alleged damages," they are entitled to the cost documentation on which he relied. Defendant contends that the documents sought are not responsive to the request, as Mr. Demchick neither used nor relied upon any such records.

There is nothing before the Court that would indicate that Mr. Demchick relied upon the documentation sought by Gateway. To be sure, Mr. Demchick listed those records upon which he relied, and noticeably absent is any mention of third-party invoices or the like. Further, Plaintiffs were offered the opportunity to depose Mr. Demchick in an attempt to ascertain whether he relied on any third-party cost documentation, but declined. Consequently, the Court finds that the documentation sought is not within the scope of request number 31. Therefore, on the basis of request number 31, the motion is denied.

## II. Plaintiffs' Motion to Compel Answers to Interrogatories

Plaintiffs also allege that Defendant breached the "best efforts" clause of the software licensing agreement. It provides, "Chesapeake agrees to use commercially reasonable best efforts throughout the term of this Agreement to promote this Agreement and the Program within its organization." In an effort to prove their claims, Plaintiffs asks that the Court order that Defendant respond to interrogatories 1 and 3, which seek specific

customer and software information.

### a. *Interrogatory Number 1*

Interrogatory number 1 asks Defendant to "[i]dentify the number of customers Chesapeake acquired and lost for products other than the Gateway software during the period 2003 through the Present." This information, Plaintiffs argue, is "relevant to establishing whether or not Chesapeake used its 'best efforts' to sell Gateway's software." Chesapeake disagrees and argues that the information sought is not relevant to the proceedings.

The Court agrees with Chesapeake that information about the number of customers of other products, whether acquired or lost, without more, does nothing to demonstrate best efforts on the part of Chesapeake and is, thus, irrelevant to this case. Nor is it likely to lead to discoverable information. This is because Plaintiffs have failed to show how these other products are even remotely, if at all, related to the software at issue. Without this information, there is nothing with which to establish a relationship between the Gateway software and the other products about which Gateway seeks sales information. As a result, it is as likely as it is not, that an evaluation of the information would be, effectively, a comparison of apples and oranges.

Plaintiffs rely on *Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530 (N.D. Ill. 2008), but their reliance is misplaced. In that case, the defendant had

agreed to use its best efforts to distribute a product called the EZTouch. *Id.* at 533. It was alleged, however, that despite the parties' agreement, the defendant had entered into negotiations with a third-party to develop a product to replace the EZTouch and that "during the point in time that [the defendant was] supposed to be selling EZTouch; [it] was actually selling [its] own product." *Id.* The court found that information regarding the sales and distribution of the newly developed product might "provide a measuring stick to judge just what [the defendant's] 'best efforts' [were]: the effort [it employed] to promote and distribute [its] own product as compared to the effort [it employed] with regard to another's product." *Id.* at 534. Finding the documentation relevant, the court ordered it produced. *Id.*

The relevancy of the information sought in *Autotech* is clear. Indeed, documents showing, for example, that the defendant sold one EZTouch and 100 of its own product would certainly call into question the defendant's assertions that it had used best efforts to market the EZTouch. This is because the two products at issue were the same. But such is not the case here. Or maybe it is. The point is that the Court has not been made aware of any similarities between the Gateway software and the other products. If the products are, indeed, comparable, then of course a stronger argument could be made that the sales

information is "relevant to whether Chesapeake was using its 'best efforts' to promote and sell Gateway's products." The same cannot be said, however, if the products are dissimilar, because there is a strong possibility that the customers were not in the market to purchase a particular type of product.

Similarly, the Court is not persuaded by *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363 (7th Cir. 1990), a case cited by Plaintiffs in support of their arguments about the relevancy of the information at issue. Though it is true that the Seventh Circuit stated, "'best efforts' means the efforts the promisor has employed in those parallel contracts where the adequacy of his efforts have not been questioned," the Court also held that the term's "meaning is especially plain in a case such as this where the promisor has similar contracts with other promisees." *Id.* at 1373. In *Olympia*, the issue was whether the plaintiff, a hotel-management firm, had used (as contracted) best efforts to make the defendant's hotel a success. *Id.* at 1365. The parallel contracts that Judge Posner spoke of there were the plaintiff's other hotel management contracts, specifically, those of "its other, but noncomplaining, customers." *Id.* at 1373. Viewed in this manner, the case does little to support Plaintiffs' arguments, considering nothing is known regarding the nature of the other products.

Accordingly, Plaintiffs' motion to compel an answer to

interrogatory number 1 is denied.

### b. *Interrogatory Number 3*

Interrogatory number 3 requested that Defendant, "[f]or the time period 2003 through the Present, specify the number of versions and patches Chesapeake issued for each software program (other than the Gateway software) that Chesapeake offers." This information is relevant, Plaintiffs maintain, because of assertions made by Defendant regarding alleged defects in the Gateway software and the number of versions and patches to the software that Gateway issued. Defendant challenges the relevancy of the interrogatory.

This interrogatory suffers from the same fatal flaw as the one discussed previously. Information regarding the number of versions and patches of various Chesapeake software programs could potentially be used to show that Gateway's releases are "high" in number if the software programs were similar in nature to the Gateway program. So, while it is true that both Gateway and Chesapeake have software programs, more is needed to reach the conclusion that they are "clearly a measure to determine whether Gateway released a 'high number' of versions and patches." The information required to determine relevancy has not been presented to the Court. Plaintiffs' motion to compel an answer to interrogatory number 3 is, therefore, denied.

## Conclusion

For the reasons set forth above, Plaintiffs' Motion to compel [ECF No. 249] is granted in part and denied in part. Their Motion to Compel Answers to Interrogatories [ECF No. 253] is denied.

Date: April 1, 2011

E N T E R E D:

*Arlander Keys*

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT